IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Majeda Mohammad,

      Plaintiff,

      v.                    Case No. 2:12-cv-702

J.P. Morgan Chase National
Corporate Services, Inc.,
et al.,

      Defendants.


OPINION AND ORDER

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-2(a)(1), 42 U.S.C. §1981, and Ohio Rev. Code Chapter 4112 by plaintiff Majeda Mohammad against defendants J.P. Morgan Chase National Corporate Services, Inc. ("Chase")[1] and Brad Arnold, a former operations unit manager for Chase.  In her complaint, plaintiff alleged that the defendants discriminated against her on the basis of her race (Arabic), national origin (Iraq), and religion (Muslim) in failing to hire her for three positions for which she allegedly interviewed with Arnold on August 16, 2011.  This matter is before the court on defendants' motion for summary judgment.

I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central issue is "whether the evidence presents a

---

[1] Chase notes that its correct business entity name is JPMorgan Chase Bank, N.A.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) and (B). In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. Id. Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial. Id. at 322 n. 3. "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008). A fact is "material" only when it might affect the outcome of the suit under the governing law. Id; Anderson, 477

U.S. at 248.

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts[.]" Matsuchita, 475 U.S. at 586. A mere scintilla of evidence is not enough. Anderson, 477 U.S. at 252; Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006). Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(3)(noting that the court "need consider only the cited materials").

II. Factual Background

The record reveals that plaintiff completed an application on Chase's online career site expressing an interest in the positions of Senior Operations Analyst, Operations Specialist - Foreclosure ("Operations Specialist"); Senior Operations Specialist - Foreclosure ("Senior Operations Specialist"), and Operations Manager, Foreclosure ("Operations Manager"), for which interviews were to be held at an August 16, 2011, hiring event or job fair at the Westerville, Ohio location. The job description for the position of Operations Specialist stated that previous experience in mortgage banking and foreclosure or legal experience were preferred qualifications. Doc. 20-3, Ex. C; Doc. 20-12, Aff. of Chase Recruiting Officer Mary DeMello, ¶ 5. Plaintiff's resume indicated that: she had a B.A. in education and social studies from the University of Baghdad, Iraq; she was currently enrolled in a distance-learning program in early childhood education at Ashworth University in Georgia; she is fluent in Arabic and English; she was

3

familiar with Microsoft Office; and that she had previously taught social studies and provided translation services; that she was currently the owner and operator of a learning center in Dublin, Ohio; and that she had established and operated a refugee services center which provided a variety of social services. Doc. 20-2, Ex. B.

According to the affidavit of Brad Arnold, plaintiff was a walk-in candidate at the Chase job fair. Plaintiff stated that she wanted to interview for the positions of Operations Specialist and Operations Manager. Doc. 20-10, Arnold Aff., ¶ 2. Arnold was conducting interviews for the position of Operations Specialist. He determined that plaintiff was not on his interview schedule, which meant that plaintiff had not been selected by Human Resources for an interview. Arnold Aff., ¶ 2. He also noted that plaintiff was not on the list for an interview for the Operations Manager position, which meant that plaintiff had not been selected by Human Resources to interview for that position. Arnold Aff., ¶ 3. Mr. Arnold told plaintiff that he would interview her for the Operations Specialist position. Arnold explained that he was not qualified to interview her for the Operations Manager position, and that if he determined that she might be qualified for that position, he would let an assistant vice president or vice president know so that he or she could decide whether to invite plaintiff to interview for that position. Arnold Aff., ¶ 4. However, Arnold informed her that Chase would most likely be seeking someone with prior mortgage or default experience, and plaintiff had neither. Arnold Aff., ¶ 4.

Arnold further stated in his affidavit that, in an effort to

"break the ice" prior to the interview, he asked plaintiff about her first name.  She responded that she was from Iraq, and Arnold stated that he had been there while serving in the army.  Plaintiff asked several questions about his experience there, and Arnold responded, trying to speak positively, indicating that the people were very friendly and that the physical landscape was beautiful.  This discussion lasted a few minutes.  Arnold Aff., ¶¶ 6-7.  Arnold then proceeded to interview plaintiff, asking her questions about her previous experience and other job-related matters.  Arnold Aff., ¶ 8.  Plaintiff stated that she was looking for a career change, but admitted that she did not have any prior mortgage banking or foreclosure experience, and she was not familiar with the job responsibilities of the Operations Specialist position.  Arnold Aff., ¶ 10.  At the conclusion of the interview, plaintiff stated that it was nice to meet someone who knew her home country, and Arnold responded that he would like to go back to Iraq some day as a tourist.  He informed plaintiff that from that point on, he would not be communicating with her; rather, Human Resources would continue any discussions regarding the status of her application.  Arnold Aff., ¶ 11.  Arnold stated that he never discussed with plaintiff any of his war-related experiences while in Iraq.  Arnold Aff., ¶ 12.  Arnold further stated that although he knew that plaintiff was originally from Iraq, he did not know her race or religion, which were never mentioned during the interview.  Arnold Aff., ¶15.

Arnold also stated that he was impressed with plaintiff, and that he recommended plaintiff for the position of Operations Specialist despite the fact that she did not have the preferred

qualifications for the position. Arnold Aff., ¶ 13. Arnold interviewed two other candidates for the Operations Specialist position on August 16, 2013, a Caucasian male and a Caucasian female. Arnold did not recommend the male candidate, who had no prior mortgage, finance or banking experience, and who, unlike plaintiff, did not have the communication skills necessary for the position. Arnold also did not recommend the Caucasian female candidate, who did have prior mortgage and finance experience, because he did not think that she was otherwise suited for the position. Arnold Aff., ¶14.

Following the interview, Arnold sent a "Chase Retail Financial Services-Offer/Decline" form recommending plaintiff for hire in the Operations Specialist position, which he identified as Exhibit E to defendants' motion for summary judgment, to Assistant Vice President/Operations Manager Christina Lieb August. On that form, he noted that "Majeda is looking to change careers away from teaching, and would make a great addition to foreclosure." Ex. E. Arnold also identified Exhibit D as his interview notes. Arnold Aff., ¶ 13. This form indicated that the position being discussed was "Senior Ops Specialist/Operations Specialist - Foreclosure Department." On that form, Arnold stated that plaintiff "was unaware of the job responsibilities" but was "familiar with Chase." In answer to the question "what makes a good employee" and a "good manager," plaintiff responded, "good communicator" and "patience." Arnold noted that in response to a question about adapting to a changing environment, plaintiff indicated that she "would prefer change to stagnation." Arnold also noted that plaintiff wanted to "work her way up," that she "owns a language school," that there

were no gaps in employment, and that she was not on any type of disciplinary action or probation. After sending Exhibit E to Christina August, he had no further involvement in the hiring process for the Operations Specialist position. Arnold Aff., ¶ 16.

Plaintiff's version of the interview on August 16th differs from that provided by Arnold. Plaintiff stated that Arnold's first question to her was about her nationality. After she informed him that she was from Iraq, Arnold "proceeded with a one-sided conversation about his war experience in Iraq going into detail about working in the Taji prison and his war experience in the city of Faluja." Mohammad Aff., ¶ 8. She stated that Arnold's conversation was "condescending, disrespectful and arrogant" and made her feel humiliated and embarrassed. Mohammad Aff., ¶ 9. Plaintiff stated that Arnold asked only two job-related questions about her degree and why she taught social studies. Mohammad Aff., ¶ 10. At the end of the interview, Arnold informed her that there was only one position she might be qualified for, and when she asked who she should contact to follow up on the interview, he curtly responded twice, "Don't call me." Mohammad Aff., ¶ 11. Plaintiff claimed that Arnold took no notes during the interview, and that he did not have Exhibit D, the interview notes, with him at that time. Mohammad Aff., ¶ 12.

Mary DeMello, the Chase recruiting officer responsible for evaluating the candidates interviewed at the August 16, 2011, job fair, stated in her affidavit that she received a list of candidates from Christina August. DeMello Aff., ¶ 2. Twenty-seven candidates applied for twenty open positions, and it was DeMello's responsibility to determine who to hire. DeMello Aff., ¶ 3.

DeMello found that plaintiff did not meet the minimum preferred qualifications for the Operations Specialist position. Plaintiff was not extended an offer because there were more recommended candidates than open positions, and plaintiff did not meet the preferred minimum qualifications for the position. DeMello Aff., ¶ 4. At that time, DeMello had no knowledge of plaintiff's national origin, race or religion. DeMello Aff., ¶ 5.

Following the interview, plaintiff telephoned her to ask about the status of her offer. At that point, DeMello informed plaintiff that she had not yet received any feedback from the interviews, that selected candidates would be notified by telephone, and that non-selected candidates would be notified by e-mail. DeMello Aff., ¶ 7. Later that day or the following day, plaintiff called again to ask about her offer. DeMello returned the call and left a message stating that the decision-making process was still on-going. DeMello Aff., ¶ 8. Plaintiff called a third time and asked to discuss the details of her offer. DeMello was taken aback by this, as she had never indicated to plaintiff that she would be receiving an offer. Plaintiff asked for the name and number of DeMello's manager. DeMello informed plaintiff that her manager was John Morell, and that she would have him contact plaintiff. DeMello Aff., ¶ 9.

Plaintiff was notified by e-mail on August 24, 2011, that she was not selected for the Operations Specialist position. DeMello Aff., ¶ 6; Doc. 20-6, Ex. F. The e-mail advised plaintiff that she was not selected for the position of Operations Specialist. The e-mail further stated that plaintiff's profile would remain in the system, and it encouraged plaintiff to continue to explore other

positions and to visit the career site from time to time to update her profile.

On August 17, 2011, plaintiff filed a complaint with Chase concerning her interview with Arnold. Mohammad Aff., ¶ 13; Doc. 20-7, Ex. G. Plaintiff stated in her affidavit that on August 18, 2011, she received a message from DeMello wanting to talk about "the problem." When plaintiff called DeMello, she did not discuss "the problem," but rather asked her it she was still interested in a job with Chase. Plaintiff said that she was, and DeMello promised to get back with her in a few days. Mohammad Aff., ¶ 14. Plaintiff called DeMello on August 22, 2011, to ask about the job, and DeMello replied, "Why are you in such a hurry? You just had the interview on August 16, 2011." DeMello said she would call in a few days. Plaintiff further stated that when she called DeMello on August 31, 2011, DeMello denied ever talking to her before, and informed plaintiff that she had not been accepted in any position. When plaintiff asked for the name of DeMello's supervisor, she responded "John Morell" and stated that she would have Morell contact her. When plaintiff did not hear from Morell, she sent him a letter on September 5, 2011, complaining about her interview with Arnold and her interactions with DeMello. Mohammad Aff., ¶ 17; Doc. 20-8, Ex. H.

John Morell, Vice President/Recruiting Officer II for Chase, stated in his affidavit that on August 17, 2013, he was given a letter from plaintiff by Amal Aziz, a Chase employee and plaintiff's friend. In this letter, identified as Exhibit G, plaintiff alleged that Arnold's first question was about her national origin, and that Arnold spent a great deal of the

interview talking about his war experience in Iraq.  In her letter,
plaintiff claimed that Arnold "thought of me as a captive audience
on whom he can safely unload his 'psychological burden of war.'"
Doc. 20-7, Ex. G.  Plaintiff stated that Arnold was "condescending,
disrespectful and arrogant" and that it was "very embarrassing and
humiliating."  Ex. G.  Plaintiff alleged that Arnold told her that
she was not qualified for the position of manager, and that, of
twelve postings, she might qualify for one, but he refused to tell
her which position that was.  Plaintiff stated that she asked
Arnold which job the interview was for, and he told her "None."
Ex. G.  Plaintiff concluded that "strong elements of bias in Mr.
Arnold's conduct and demeanor were filtering through his facade.
Surely, Chase would not allow its reputation to be maligned as a
discriminatory organization."  Ex. G.  Morell forwarded the letter
to Human Resources for investigation.  Doc. 20-11, Morell Aff., ¶
2.

On September 5, 2011, Morell received an e-mail from plaintiff
complaining about her interactions with DeMello.  Morell Aff., ¶ 3.
He telephoned plaintiff on September 7, 2011, to acknowledge
receipt of her e-mail and to inform her that the matter would be
investigated.  Both Arnold and DeMello were contacted by Human
Resources concerning plaintiff's complaints.  Arnold Aff., ¶ 17;
DeMello Aff., ¶ 10.  Following the investigation, Morell was
informed by Human Services that Arnold and DeMello did not act
inappropriately.  Morell Aff., ¶¶ 2, 4.  On September 9, 2011,
Morell telephoned plaintiff and told her that her complaints had
been investigated and that Chase had found no evidence of
inappropriate or discriminatory practices in the hiring process.

10

He also informed plaintiff that she was welcome to apply for other positions at Chase.  Morell Aff., ¶ 5.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on October 4, 2011.  The EEOC issued a right-to-sue letter on or about May 16, 2012.

III. Plaintiff's Claims

A. Applicable Standards

Absent direct evidence of discrimination,[2] plaintiff's failure-to-hire discrimination claims under Title VII, §1981 and Ohio Rev. Code §4112.02 are governed by the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008)(applying McDonnell Douglas analysis to Title VII and §1981 claims); Laderach v. U-Haul of Northwestern Ohio, 207 F.3d 825, 828 (6th Cir. 2000)(Title VII standards apply to Ohio discrimination laws)(citing Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n, 61 Ohio St.3d 607, 575 N.E.2d 1164, 1167 (1991)).

Under the McDonnell Douglas framework, plaintiff bears the burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  White, 533 F.3d at 391.  To establish a prima facie case of discrimination, plaintiff must

_____

[2] There is no direct evidence of discrimination in this case.  Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.  Amini v. Oberlin Coll., 440 F.3d 350, 359 (6th Cir. 2006).  Where one must draw an inference to determine the actor's motivation, the evidence is not direct.  Romans v. Michigan Dep't of Human Services, 668 F.3d 826, 836 (6th Cir. 2012).  Because it would be necessary to infer from Arnold's inquiry about plaintiff's national origin and his discussion of his wartime experiences in Iraq that his actions or decisions were motivated at least in part by a discriminatory animus based on her national origin, his statements do not constitute direct evidence.

demonstrate: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that another similarly-situated candidate outside the protected class was hired or treated more favorably, or that the employer continued to seek applications from persons with plaintiff's qualifications. <u>Rodriguez-Monquio v. Ohio State University</u>, 499 Fed.Appx. 455, 459 (6th Cir. 2012)(citing <u>Younis v. Pinnacle Airlines, Inc.</u>, 610 F.3d 359, 363 (6th Cir. 2010)); <u>Birch v. Cuyahoga Cty. Probate Court</u>, 392 F.3d 151, 165-66 n. 12 (6th Cir. 2004).

Once plaintiff establishes this <u>prima</u> <u>facie</u> case, the burden shifts to the defendants to "offer evidence" of a legitimate, non-discriminatory reason for the adverse employment action.  <u>White</u>, 533 F.3d at 391; <u>see</u> <u>also</u> <u>Adamov v. U.S. Bank Nat'l Ass'n</u>, 726 F.3d 851, 854-55 (6th Cir. 2013)(defendant's burden is one of production, not persuasion).  If the defendants succeed in this task, the burden shifts back to the plaintiff to show that the defendants' proffered reason was not the true reason, but merely a pretext for discrimination. <u>Adamov</u>, 726 F.3d at 854 (burden was on plaintiff to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a discriminatory decision); <u>White</u>, 533 F.3d at 391-92; <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1083 (6th Cir. 1994).  Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff.  <u>White</u>, 533 F.3d at 392.

Pretext may be established by showing that the employer's

12

stated reason for the adverse employment action either: (1) has no basis in fact; (2) was not the actual reason; or (3) is insufficient to explain the employer's action. <u>Imwalle v. Reliance Med. Prods., Inc.</u>, 515 F.3d 531, 545 (6th Cir. 2008). Plaintiff may demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision "to the extent that such an inquiry shed light on whether the employer's proffered reason for the employment action was its actual motivation." <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 578 (6th Cir. 2003). Plaintiff bears the ultimate burden to prove pretext, and to survive summary judgment, she must provide evidence that could lead a reasonable jury to find that the defendants' proffered reasons for declining to hire her were pretextual. <u>Davis v. Cintas Corp.</u>, 717 F.3d 476, 492 (6th Cir. 2013).

## B. Defendant's Knowledge of Plaintiff's Membership in Protected Groups

Defendants do not dispute that plaintiff is a native of Iraq, that her race is Arabic, and that her religion is Muslim. However, in proving a case of discrimination, plaintiff bears the burden of demonstrating that the decision-maker for the employer had actual knowledge of her membership in these protected classes. <u>See Prebilich-Holland v. Gaylord Entertainment Co.</u>, 297 F.3d 438, 443–444 (6th Cir. 2002).

In this case, there is no evidence that Brad Arnold, the person who interviewed plaintiff, or Mary DeMello, the recruiting officer who made the decision not to hire plaintiff, knew that plaintiff's race was Arabic, or that she was a Muslim. Plaintiff has provided no evidence that anyone at Chase commented on her race

13

or religion, nor does plaintiff claim that she and Arnold discussed her race or religion during the interview. Because there is no evidence in the record concerning plaintiff's physical appearance, it cannot be inferred that Arnold, in meeting plaintiff, would think of her as anything other than Caucasian. Arnold also stated in his affidavit that he did not know plaintiff's race or religion. Arnold Aff., ¶ 15. The first time plaintiff referred to her race and religion was in her September 5, 2011, e-mail correspondence to DeMello's supervisor, John Morell. This occurred after DeMello's August 24, 2011, decision not to extend plaintiff an offer. See Doc. 22-2, DeMello Aff. ¶¶ 14-15; Doc. 20-8, Ex. H.

DeMello, who reviewed the referrals from the interviews and made the decision concerning which candidates would receive job offers, stated that she had no knowledge of plaintiff's race, religion, or national origin at the time she made her decision. DeMello Aff., ¶¶ 3, 5. DeMello also stated in her affidavit that she did not make any conclusions about plaintiff's race, religion or national origin based upon information provided in her resume, such as where she attended college (Baghdad), the languages she speaks, or her extracurricular activities. Doc. 22-2, DeMello Aff., ¶ 14. Plaintiff's name alone would not establish that DeMello would have been aware of that information. The well-known African-American boxer, Muhammad Ali, who changed his name from Cassius Clay, is one example of how a Middle Eastern-sounding name is not necessarily an accurate indicator of race or national origin. In this day of global travel and interaction, it is not unusual for individuals to live, work, marry or study outside their native country.

14

Arnold stated that he did know that plaintiff was from Iraq. Arnold Aff., ¶ 15.  In view of Arnold's knowledge of plaintiff's national origin, the relevant question is whether he took any adverse action which influenced DeMello's decision not to hire plaintiff.

The first dispute of fact plaintiff attempts to raise concerns the number of positions for which she actually interviewed. Plaintiff claims that she attended the August 16, 2011, hiring event for the positions of Operations Specialist, Senior Operations Specialist, and Operations Manager.[3]  Mohammad Aff., ¶ 6.  She stated that she was interviewed by Arnold "for what I believed to be all three job positions[.]"  Mohammad Aff., ¶ 7.  Plaintiff's subjective and conclusory allegations that she "believed" that she was interviewing for all three positions when she talked with Arnold are insufficient to raise a genuine dispute of material fact in regard to Arnold's statement that he interviewed plaintiff only for the Operations Specialist position.  See Hartsel v. Keys, 87 F.3d 795, 804 (6th Cir. 1996); Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992)("conclusory allegations and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law").  Plaintiff's affidavit is also insufficient under Fed. R. Civ. P. 56(c)(4), as it fails to disclose that she had any personal knowledge concerning Chase's interview practices and procedures.  See Mitchell, 964 F.2d at 584.

Defendant has presented evidence that plaintiff was not invited

---

[3] The job number 110067669 referred to by plaintiff in her affidavit as being connected with the position of senior operations specialist was actually the job requisition number for the position of Senior Operations Analyst.  See Doc. 20-1, Ex. A, p. 1.

by Human Resources to the August 16, 2011, job fair to interview for any of the three positions. Plaintiff was interviewed by Arnold for the position of Operations Manager as a walk-in applicant. Doc. 22-2, DeMello Aff., ¶ 11; Arnold Aff., ¶¶ 2-4. Arnold explained to plaintiff that he could only interview her for the position of Operations Specialist because he was not qualified to interview her for the management level position of Operations Manager. Arnold Aff., ¶ 4. Exhibit E, the Offer/Decline Form Arnold forwarded to Christina August, recommended offering plaintiff the position of Operations Specialist, hiring number 110053989. The computer printout of plaintiff's job application file includes a note by DeMello next to the position of Senior Operations Specialist, hiring number 110053992, that plaintiff was interviewed on August 16, 2011, but that note does not specifically state that plaintiff was interviewed for the position of Senior Operations Specialist. Significantly, the entry for the Operations Specialist position for which plaintiff was interviewed includes the notation "Offer 1 - Created" dated August 18, 2011, but the record for the Senior Operations Specialist position does not. See Doc. 22-7, Ex. B, pp. 32-34. The computer printout does not indicate that plaintiff interviewed for any other positions on August 16, 2011.

Defendants have also presented additional evidence on the issue of whether plaintiff interviewed for other positions. Assistant Vice President/Foreclosure Manager Michael Fleshman stated in his affidavit that Arnold did not conduct the interviews for the positions of Operations Manager and Senior Operations Analyst; rather, those interviews were conducted by Fleshman and other employees. Doc. 22-1, Fleshman Aff., ¶ 6. The only rejection e-

16

mail sent to plaintiff which is included in the record is the August 24, 2011, e-mail referring to the Operations Specialist, hiring number 110053989.  See Ex. E.

The only evidence in the record concerning Arnold's involvement in the hiring process for the position of Operations Specialist is that Arnold recommended plaintiff for hire for the Operations Specialist position despite the fact that she did not have the preferred qualifications for the position and had no relevant experience. Arnold Aff., ¶ 13.  Arnold identified Exhibit E as the "Chase Retail financial Services-Offer/Decline Form he completed for plaintiff, and Exhibit D as his interview notes.  Arnold Aff., ¶ 13. After sending Exhibit E, the Offer/Decline form, to Assistant Vice President/Operations Manager Christina Lieb August, he had no further involvement in the hiring process. Arnold Aff., ¶ 16.

Plaintiff now seeks to raise a dispute of fact about the authenticity of Exhibits D, E and F.  In regard to Exhibit D, identified by Arnold as his notes from his interview with plaintiff, see Arnold Aff., ¶ 13, plaintiff claims that Arnold did not take any notes during the interview.  Mohammed Aff., ¶ 12.  However, Arnold did not specify that he wrote the notes during the interview; they easily could have been completed afterward.

Plaintiff also challenges Exhibits E and F.  Exhibit E is an Offer/Decline Form for the Operations Specialist position, hiring requisition no. 110053989, which is filled in by hand, with the "OFFER" box checked.  The form includes the date "07/27/2011" typed at the top.  Exhibit F is the rejection e-mail dated August 24, 2011, which informed plaintiff of her non-selection for the position of Operations Specialist, no. 110053989.  with no discussion of the

factual basis for her belief, plaintiff claims that these forms related to a previous Chase job fair she attended on July 26, 2011, when she allegedly interviewed with Mike Fleshman for the position of Operations Specialist. Mohammad Aff., ¶¶ 3-5. Plaintiff suggests that defendants are attempting to fraudulently substitute documents from the earlier interview in an effort to falsely establish that Arnold recommended her for hire, thereby minimizing Arnold's allegedly discriminatory actions.

Defendants note that although Exhibit E refers to a position "Reporting To: Mike Fleshman," Fleshman's name does not appear anywhere on the form as the interviewer. Fleshman stated in his affidavit that he has never have any contact with plaintiff, has never interviewed plaintiff for or in connection with any position at Chase, and has never completed an Offer/Decline Form relating to plaintiff. Fleshman Aff., ¶ 3. DeMello stated in her affidavit that Chase did not hold any hiring event on July 26, 2011, and that August 16, 2011, was the only time plaintiff interviewed for the Operations Specialist position. Doc. 22-2, DeMello Aff., ¶ 16.

Even accepting plaintiff's conclusory statement that she interviewed with Fleshman on July 26, 2011, this evidence is insufficient to create a genuine dispute of material fact concerning the authenticity of Exhibit E as being the Offer/Decline document prepared by Arnold following his interview with plaintiff, or of Exhibit F as being the e-mail notification of non-selection relating to the August 16th interview identified by DeMello. With their reply memorandum, defendants have submitted additional evidence establishing that Exhibit E was completed by Arnold following his interview of plaintiff on August 16, 2011. Christina August stated

in her affidavit that she was responsible for compiling the Offer/Decline Forms in connection with the Operations Specialist position, job number 110053989. Doc. 22-3, August Aff., ¶ 3. She identified Reply Exhibit A as an e-mail dated August 16, 2011, which she received from Arnold with the subject line "Offer-Decline forms 8/16 hiring event: with "Majeda Mohammed [sic] - Offer 110053989" as an attached document. The attached document is a typed version of Exhibit E, the Offer/Decline Form, bears the correct interview date of 8/16/2011, with plaintiff as the person being interviewed for job number 110053989, and the "OFFER" box is checked. The date on Exhibit E is "07/27/2011," not July 26, 2011, the date on which plaintiff alleges that she interviewed with Fleshman. The Interview Notes box includes the same language which was handwritten in that box on Exhibit E, namely, "Majeda is looking to change careers away from teaching, and would make a great addition to the foreclosure department." In addition, DeMello identified Exhibit F as the e-mail plaintiff received informing her that she was not selected for the position of Operations Specialist after DeMello evaluated the candidates recommended for offers at the August 16, 2011, job fair. Doc. 20-12, DeMello Aff., ¶¶ 2, 4-6.

There is no genuine dispute of material fact that Arnold recommended that plaintiff receive an offer for the position of Operations Specialist. There is also no evidence from which a jury could reasonably find that any discriminatory animus Arnold may have felt based on plaintiff's national origin adversely impacted DeMello's decision-making process.

DeMello, who reviewed the referrals from the interviews and made the decision concerning which candidates would receive job

19

offers, stated that she had no knowledge of plaintiff's race, religion, or national origin at the time she made the decision not to hire plaintiff on August 24, 2011. DeMello Aff., ¶¶ 3, 5-6. DeMello also stated that on August 24, 2011, she was not aware that plaintiff had any issues with her interview with Arnold. Doc. 22-2, DeMello Aff., ¶ 15. DeMello was also unaware on August 24, 2011, that plaintiff had any complaints about her interaction with DeMello; plaintiff's letter to Morell complaining about DeMello was e-mailed to him on September 5, 2011. DeMello Aff., ¶ 15.

Plaintiff seeks to create a dispute of fact concerning DeMello's knowledge of her national origin, race or religion by claiming that on August 18, 2011, she received a voice mail message from DeMello stating that she wanted to discuss "the problem." Plaintiff stated that when she returned DeMello's call, DeMello did not discuss "the problem" and only asked if plaintiff was still interested in a job with Chase. Mohammad Aff., ¶ 14. Plaintiff claimed that on August 31, 2011, after the rejection notice of August 24, 2011, she called DeMello again and DeMello denied ever having had a conversation with plaintiff. Mohammad Aff., ¶ 16. Even assuming that DeMello made the statements attributed to her by plaintiff, there is no evidence that DeMello ever made any reference to plaintiff's national origin, race or religion in any of these conversations. Plaintiff has provided no evidence that DeMello ever explained what she meant by "the problem." The nature of "the problem" allegedly mentioned by DeMello in her phone message is purely speculative. This vague reference to "the problem" is not sufficient to raise an inference that DeMello was aware of plaintiff's national origin, race or religion, or that she had any

20

knowledge of plaintiff's complaints concerning her interview with Arnold.

Plaintiff also attempts to discredit DeMello by claiming that DeMello went on-line and cancelled out each of the positions that plaintiff applied and interviewed for with Arnold on August 16, 2011. However, DeMello stated that each position was assigned both a sourcing requisition number (when the position was opened in the system by the recruiter assigned to fill the position in anticipation of the one-day hiring event) and a hiring requisition number. Doc. 22-2, DeMello Aff., ¶¶ 5, 7, 10. After the hiring event was concluded, the sourcing requisition numbers were no longer relevant, and DeMello cancelled them on August 23, 2011. DeMello Aff., ¶ 8. The hiring requisition number for the position of Operations Specialist, 110053989, remained in the system, and was used to hire individuals for the open Operations Specialist positions. DeMello Aff., ¶ 9. The deletion of the sourcing requisition numbers by DeMello fails to prove that DeMello acted improperly during the hiring process.

The evidence fails to show that DeMello, the person who ultimately decided not to extend plaintiff a job offer, had any knowledge of plaintiff's national origin, race or religion or was negatively influenced by Arnold or anyone who had such knowledge. No genuine dispute of material fact has been shown to exist in that regard, and plaintiff has not established the first element of her prima facie case.

C. Qualified for the Position

The second element of the prima facie case requires evidence sufficient to prove that plaintiff was qualified for the job. The

job description for the position of Operations Specialist states that mortgage banking experience was preferred, and that previous foreclosure or legal experience was preferred. Doc. 20-3, Ex. C. Plaintiff admitted to Arnold that she did not have any prior mortgage banking experience or previous foreclosure experience. Arnold Aff., ¶ 10. Plaintiff's resume reflects no mortgage banking, foreclosure or legal experience and plaintiff has presented no other evidence that she has any such experience. See Doc. 20-2, Ex. B. However, without discussing the factual basis for her knowledge, plaintiff now argues that when she completed the on-line application process and received an acknowledgment of receipt of her application, she was automatically pre-qualified for the positions for which she applied.

There is no evidence in the record to support plaintiff's claim that she was pre-qualified for these three positions prior to her interview. DeMello stated in her affidavit that Chase's on-line application process uses information provided by the applicant to automatically generate computer notifications of open positions for which an applicant may want to apply. Doc. 22-2, DeMello Aff., ¶ 3. If the applicant receives a job posting notification, that does not mean that the applicant is pre-qualified for the position. At the time such notices are sent, no Chase recruiter has reviewed the applicant's qualifications, and Chase does not pre-qualify any applicant for a position. DeMello Aff., ¶ 4.

The language of the computer notifications sent to plaintiff speaks for itself. The notice acknowledged that each of plaintiff's applications expressing an interest in the positions of Operations Specialist, Senior Operations Analyst and Operations Manager "has

been successfully received." The notices further stated that "[a] member of our Staffing department will review your qualifications. Those candidates with the experience and qualifications that correspond to our requirements may be contacted by a member of our Staffing department." See Doc. 22-8, Reply Ex. C. There is no evidence that plaintiff was ever contacted by a Staffing member. According to DeMello, plaintiff was not pre-qualified for any position for which she received a job posting notification or for which she applied, and Chase did not invite plaintiff to attend the August 16, 2011, job fair. DeMello Aff., ¶¶ 4, 11. DeMello also determined that plaintiff did not meet the minimum preferred qualifications for the Operations Specialist position. DeMello Aff., ¶ 13.

The evidence is insufficient to create a genuine dispute of material fact in regard to whether plaintiff was qualified for any of the positions for which she applied.

D. Adverse Employment Action

The third element of the prima facie case is that plaintiff suffered an adverse employment action. The evidence shows that plaintiff suffered an adverse employment action when she was not hired for the Operations Specialist position. Therefore, this element of the prima facie case is satisfied. However, because the evidence is insufficient to show the existence of a genuine dispute of material fact in regard to whether plaintiff interviewed for the positions of Senior Operations Specialist, Senior Operations Analyst and Operations Manager Foreclosure, or whether she received notice of her non-selection for those positions, her claim of discrimination based on Chase's failure to hire her for those

positions fails.

E. Similarly-Situated Persons Outside Protected Group Were Hired

     The fourth element of the prima facie case requires plaintiff to prove that another similarly-situated candidate outside the protected class was hired or treated more favorably, or that the employer continued to seek applications from persons with plaintiff's qualifications.  See White, 429 F.3d at 242 (in order to satisfy the fourth prong, plaintiff must establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications).  Plaintiff acknowledges that she has no direct evidence indicating that comparable, non-protected persons were treated more favorably.  Doc. 21, p. 12.  However, she claims for the first time in her memorandum contra defendants' motion for summary judgment that she does not have this information because it is in the defendants' possession.

     Defendants note that plaintiff and her counsel never requested the production of information concerning the other individuals who were hired for the Operations Specialist position following the August 16, 2011, job fair in the discovery phase of this case.  Chase provided answers, responses and objections to plaintiff's First Set of Interrogatories and First Request for Production of Documents, see Doc. 21, Ex. 3, and Arnold provided answers, responses and objections to plaintiff's Request for Admissions, Interrogatories and Request for Production of Documents, see Doc. 22, Ex. D.  Eve M. Ellinger, co-counsel for defendants, stated in her affidavit that at no time did plaintiff or plaintiff's counsel contact her or Chase to complain that Chase's discovery responses

24

were deficient in any way. Doc. 22-5, Ellinger Aff., ¶ 3. She also stated that plaintiff and her counsel never contacted her regarding taking depositions, and never sent a notice for depositions.

The scheduling order entered by the magistrate judge on November 14, 2012, set a discovery deadline of May 7, 2013, thus allowing almost six months for discovery. The record reveals that plaintiff never moved to extend that deadline, and never filed a motion to compel discovery or a notice of deposition. Under Fed. R. Civ. P. 56(d) (formerly Fed. R. Civ. P. 56(f)), a nonmovant may show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, and request that the court allow time for additional discovery. Fed. R. Civ. P. 56(d)(2). Plaintiff never filed a motion under Rule 56(d). Under Fed. R. Civ. P. 56(c)(1)(A), a party moving for summary judgment may rely on a variety of materials in the record, including documents, electronically stored information, and affidavits. Defendants were under no obligation to schedule depositions on their own initiative, with no request from plaintiff, in order to provide plaintiff with discoverable information.

Having failed to fully take advantage of the discovery process, plaintiff cannot excuse her failure to provide evidence sufficient to establish the fourth element of her prima facie case by saying that the information is in the custody of the defendants. Because there is no evidence that other similarly-situated applicants outside plaintiff's protected class were hired for the Operations Specialist positions, plaintiff has failed show that she could prove the fourth element of her prima facie case.

F. Legitimate Nondiscriminatory Reason for Failure to Hire

Even assuming that plaintiff had established a <u>prima</u> <u>facie</u> case, defendants have advanced a legitimate, nondiscriminatory reason for not hiring plaintiff. The job description for the Operations Specialist position stated that mortgage banking experience was preferred, and that previous foreclosure or legal experience was preferred. Doc. 20-3, Ex. C. Plaintiff did not have these qualifications. Doc. 20-3, Ex. B; Arnold Aff., ¶ 10. DeMello stated that there were twenty-seven candidates who were interviewed on August 16, 2011, and who were recommended to receive offers. Doc. 20-12, DeMello Aff., ¶ 3. DeMello determined that plaintiff did not meet the minimum preferred qualifications for the Operations Specialist position. Plaintiff did not receive an offer because there were more recommended candidates than open positions, and plaintiff did not meet the preferred minimum qualification for the position. DeMello Aff., ¶ 4. In plaintiff's computer file, DeMello noted On August 24, 2011, in connection with the Operations Specialist position, number 110053989, that plaintiff "lacks foreclosure/mortgage exp." Doc. 22-7, p. 32.

Although plaintiff acknowledges that defendants' burden is one "of production, not persuasion[,]" plaintiff argues that defendants "offer little to this court to prove that their reason was legitimate and non-discriminatory[.]" <u>See</u> Doc. 21, pp. 14-15. Defendants were only required to "offer evidence of a legitimate, nondiscriminatory reason for the adverse employment action." <u>White</u>, 533 F.3d at 391; <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000)(the employer's burden is one of production, not persuasion). The defendants have offered competent evidence in the form of affidavits and documentary evidence sufficient to meet their

burden of producing evidence of a legitimate reason for Chase's reason not to hire plaintiff.

G. Proof of Pretext

Pretext may be established by showing that the employer's stated reason for the adverse employment action either: (1) has no basis in fact; (2) was not the actual reason; or (3) is insufficient to explain the employer's action. Imwalle, 515 F.3d at 545. Plaintiff has not met this burden. She does not dispute that she has no prior mortgage banking, foreclosure or legal experience. Plaintiff has produced no evidence that her lack of these qualifications has no basis in fact or was not the actual reason for Chase's failure to hire her. She has offered no evidence that her lack of these qualifications was insufficient to explain Chase's action.

Plaintiff argues that defendants were required to show that the twenty applicants who were awarded Operations Specialist positions had prior mortgage banking, foreclosure or legal experience. This mischaracterizes the defendants' burden and improperly shifts the burden of showing pretext away from plaintiff. See Adamov, 726 F.3d at 854. It is plaintiff "who needed to 'demonstrate by competent evidence that the presumptively valid reasons for [her] rejection were in fact a coverup for a ... discriminatory decision.'" Id. (quoting McDonnell Douglas, 411 U.S. at 805); see also Davis, 717 F.3d at 492 (to survive summary judgment, plaintiff must provide evidence that could lead a reasonable jury to find that the defendants' proffered reasons for declining to hire here were pretextual). Plaintiff has not met her burden in this case.

IV. Conclusion

The court concludes that no genuine dispute of material fact has been shown to exist in this case, and that defendants are entitled to summary judgment on plaintiff's claims.  The defendants' motion for summary judgment (Doc. 20) is granted.  The clerk is directed to enter judgment in favor of defendants on all of plaintiff's claims.

Date: October 28, 2013                        s/James L. Graham
                                         James L. Graham
                                         United States District Judge